IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-459-D

| | |
|---|---|
| MARY MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Mary Massey ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-33] be denied, Defendant's Motion for Judgment on the Pleadings [DE-35] be granted, and the agency's final decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB and SSI on September 19, 2006, alleging disability beginning January 3, 2006. (Tr. 55-58, 825.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 55-58, 80-81.) On August 25, 2009, a hearing was held before Administrative Law Judge

Larry A. Miller ("ALJ"), who issued an unfavorable ruling on September 21, 2009. (Tr. 26, 20.) Plaintiff's request for review by the Appeals Council was denied December 6, 2010. (Tr. 1-3.) On Plaintiff's appeal to this court, the matter was remanded to the Commissioner on defendant's motion for further evaluation of Plaintiff's mental impairments, medical source opinion, credibility, residual functional capacity, and ability to perform past relevant work. (Tr. 912.)

Prior to the resolution of Plaintiff's initial application for benefits, Plaintiff filed a separate application for Title II and Title XVI benefits alleging that she was disabled as of January 1, 2010. (Tr. 826.) In a decision dated May 23, 2010, she was found disabled as of January 1, 2010. (*Id.*)

On January 5, 2012, the Appeals Council vacated and remanded to the ALJ the decision denying Plaintiff's initial disability application. On remand, the ALJ conducted an additional hearing on May 8, 2012, at which Plaintiff was represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 847, 854-61.) Because Plaintiff had previously been found disabled as of January 1, 2010, the hearing was limited to the time period of January 3, 2006 through December 31, 2009. (Tr. 849-50.) On June 8, 2012, the ALJ issued a decision denying Plaintiff's request for benefits. (Tr. 838.) On April 24, 2013, the Appeals Council "considered the reasons Plaintiff disagreed with the [ALJ's] decision" and "found no reason under [their] rules to assume jurisdiction," making the ALJ's decision the final decision of the Commissioner. (Tr. 804.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings

and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.

3

1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment from January 3, 2006 through December 31, 2009. (Tr. 828.) Next, the ALJ determined Plaintiff had the following severe impairments during the relevant timeframe: chronic pulmonary obstructive disorder (COPD), lumbar degenerative disc disease, major depressive disorder, bipolar disorder, obesity, and history of myocardial infarction. (*Id*.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 829-30.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that during the relevant period Plaintiff had the ability to perform light work with the following restrictions:

> [T]he claimant was limited to occasional balancing and climbing; frequent stooping, crouching, kneeling, and crawling; should have avoided working at heights or around dangerous machinery; should have avoided working in environments with concentrated respiratory irritants such as dust, fumes, or smoke; had a decrease in the ability to concentrate on and attend to work tasks to the extent that the individual can only do simple, routine, repetitive tasks (i.e. unskilled work); was limited to occasional interaction with coworkers and supervisors and should never have had interaction with the public; and was unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

(Tr. 830.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 831.) At step four, the ALJ concluded Plaintiff was capable of performing the requirements of her past relevant work as a small products assembler as

generally performed. (Tr. 836.) Out of an abundance of caution, the ALJ proceeded to step five and noted other jobs that exist in the national and local economies that Plaintiff is able to perform. (*Id.*) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is not disabled because she is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 837.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on numerous grounds. Plaintiff first contends that the ALJ erred by posing a hypothetical that failed to account for all of Plaintiff's non-exertional limitations. Second, Plaintiff asserts that the ALJ erred in failing to include in the RFC a limitation to "very simple," low-stress work. Third, Plaintiff argues that the ALJ failed to make a legally sufficient credibility finding. Finally, Plaintiff contends that the ALJ erred as a matter of law in refusing to accept the Third Party Function Report submitted by Plaintiff's daughter.

### A. Non-Exertional Limitations

Plaintiff contends that on remand the ALJ erred by failing to include a limitation to low-stress work, failing to include a limitation to a job with "very simple" instructions, and failing to include limitations addressing Plaintiff's shortness of breath. Plaintiff specifically takes issue with the hypothetical posed in the second hearing, stating it is "virtually the same as the one posed in the first [hearing]." The hypotheticals are largely the same except the ALJ provided the following explanation of "simple, routine, repetitive tasks" in the second hearing: "I mean [she] can apply common sense understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations." (Tr. 855.)

5

While the hypotheticals from each hearing are basically the same, the ALJ further articulated limitations resulting from Plaintiff's mental impairments in the RFC in the second hearing decision. For example, the RFC in the first hearing decision did not include any limitations resulting from Plaintiff's mental impairments, whereas the ALJ included the following limitations in the second hearing decision as required by the Appeals Council's remand:

> [Claimant] had a decrease in the ability to concentrate on and attend to work tasks to the extent that the individual can only do simple, routine, repetitive tasks (i.e. unskilled work); was limited to occasional interaction with coworkers and supervisors and should never have had interaction with the public; and was unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

(Tr. 830.) Albeit the ALJ did not use the precise terms "low-stress work" and "very simple instructions," the RFC included appropriate limitations concerning Plaintiff's mental impairments. The ALJ meticulously analyzed the medical records pertaining to Plaintiff's mental impairments, noting GAF scores, stress tolerance, memory impairment, and ability to concentrate. (Tr. 831-33.) Concerning Plaintiff's mental health records, the ALJ directly addressed the opinions of Dr. Giuliana Gage and Dr. Anthony Carraway, assigning both significant weight. (Tr. 832, 835.) The ALJ additionally addressed the medical records produced by Plaintiff's treating physicians at Behavioral Education and Resource Specialists, though no opinion was provided by those physicians concerning Plaintiff's ability to work. (Tr. 832-33.)

Plaintiff's reported shortness of breath was adequately addressed by limiting Plaintiff to light work and adding the non-exertional limitation that Plaintiff not be exposed to concentrated respiratory irritants such as dust, fumes, or smoke. Throughout the medical record, it is evident that Plaintiff has been diagnosed with COPD and sometimes uses oxygen to help her sleep. (Tr. 266, 343, 398, 513.) However, while wheezing and coughing are sometimes noted (Tr. 634, 652, 673), most of the medical records indicate that Plaintiff was not under any respiratory distress

(Tr. 456, 577, 589, 603). Some records indicate that Plaintiff's symptoms are brought on by physical activity. (Tr. 526.) In such cases, Plaintiff appears to be successfully treated with a nebulizer. (Tr. 528.) The ALJ thus appropriately included limitations concerning Plaintiff's physical activity and exposure to respiratory irritants in both the hypothetical and the RFC.

   B.   **Residual Functional Capacity**

Next, Plaintiff argues that the ALJ failed to comply with the Appeals Council's instruction to address on remand Plaintiff's limitation to low-stress work. Specifically, Plaintiff asserts that the RFC from the first hearing decision and the RFC from the second hearing decision are essentially the same. However, the first RFC contained no limitations concerning Plaintiff's mental impairments even though the ALJ appeared to find evidence supporting the mental impairments alleged. The second RFC, as stated above, included several additional limitations entirely based on Plaintiff's mental impairments. Additionally, the ALJ discussed Plaintiff's medical records in great detail and gave both Dr. Carraway's and Dr. Gage's opinions significant weight. (Tr. 831-33, 835.)

Dr. Carraway described Plaintiff as having below average intellectual functioning and stated in his assessment:

> This patient has moderate impairment of short-term memory, mild impairment of immediate memory, and mild impairment of attention and concentration. She appears chronically depressed. Also, she is rather socially isolated. Her ability to understand, retain and perform instructions is minimally to mildly impaired. Her ability to perform simple repetitive tasks primarily would be limited by her physical complaints. Her task persistence appears to be rather moderately impaired. Her stress tolerance appears to be moderately poor.

(Tr. 233.)

Like Dr. Carraway, Dr. Gage reported that Plaintiff had several moderate limitations due to mental impairments but did not suffer from marked limitations. (Tr. 235-36.) In his assessment,

7

Dr. Gage stated that Plaintiff "is able to understand and remember very simple instructions. . . . [Concentration, persistence, and pace] is adequate for SRRTs. . . . [Plaintiff] would have trouble coping with a great deal of workplace changes and stressors but should be able to handle routine changes in the work place."  (Tr. 237.)

The ALJ addressed both doctors' concerns when he limited Plaintiff to light work, simple, routine, and repetitive tasks, only occasional interaction with coworkers and supervisors, no contact with the public, no complex decision-making, no constant change, and no dealing with crisis situations.  (Tr. 830.)  These limitations address the need for Plaintiff to work in a low-stress job.  Thus, the ALJ effectively addressed Plaintiff's need for low-stress work within the RFC.

    **C.**    **Plaintiff's Credibility**

Plaintiff further argues that the ALJ erred in assessing her credibility.  In assessing a claimant's credibility, the ALJ must follow a two-step process.  First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms.  *Craig*, 76 F.3d at 594–95.  Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms.  *Id.* at 595.  The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (eff. July 2, 1996).

The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

    (1) Claimant's daily activities;

8

(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

The ALJ found Plaintiff not fully credible stating:

"The claimant is not found fully credible because her testimony appeared to exaggerate her symptoms. Moreover, when she received consistent mental health treatment and took her prescribed medications, she improved." (Tr. 831.)

Plaintiff takes issue with the language used later in the decision explaining the ALJ's evaluation of Plaintiff's credibility, when the ALJ states

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible.*
>
> In terms of the claimant's alleged disabling conditions, although the claimant described daily activities which were fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. *First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence.* . . .

(Tr. 834 (emphases added).) Plaintiff states that this language is boilerplate that the Commissioner no longer uses due to criticism received from the Seventh Circuit. *See Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

Notwithstanding the Seventh Circuit's criticism, the inclusion of such language does not require remand where the ALJ has otherwise adequately explained the reasons for the credibility determination. *See Baysden v. Colvin*, No. 4:12-CV-303-FL. 2014 WL 1056996, at *6-7 (E.D.N.C. Mar. 18, 2014); *Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013). Here, the ALJ provides further explanation of his credibility determination stating:

> Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. The record reflects significant gaps in the claimant's history of mental health treatment, and the treatment the claimant has received was generally routine and conservative in nature. The claimant was prescribed and took appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications were relatively effective in controlling claimant's symptoms. In addition, the record does not contain any opinions from treating or examining physicians indicating that the claimant was disabled or even had limitations greater than those determined in this decision.

(Tr. 834.) Further, the ALJ extensively analyzed the medical record within his decision, as well as Plaintiff's testimony from both hearings. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and after examining the evidence in the record, the ALJ determined Plaintiff was not fully credible. (*Id.*) Thus, the ALJ properly evaluated Plaintiff's credibility and his determination is supported by substantial evidence.

### D. Third Party Function Report

Lastly, the Plaintiff contends that the ALJ erred as a matter of law in refusing to accept the Third Party Function Report because the third party was related to Plaintiff and was not medically

10

trained.  In addition to evidence from the acceptable medical sources, an ALJ may also consider evidence from non-medical sources, such as relatives.  20 C.F.R. § 404.1513(d)(4). "Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence." *Morgan v. Barnhart*, 142 Fed. App'x 716, 731 (4th Cir. 2005).  The mere fact that a family member is not a neutral party is an insufficient reason to reject her statements.  *See Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 WL 4899754, at *11 (E.D.N.C. Sept. 20, 2011), *adopted memorandum & recommendation*, 2011 WL 4888868 (E.D.N.C. Oct. 12, 2011).  In the instant case, a Third Party Function Report had been submitted by Plaintiff's daughter describing Plaintiff's daily activities. The ALJ determined that the report did not establish that Plaintiff was disabled.  The ALJ questioned the accuracy of the daughter, stating she was not medically trained, was not a disinterested party, and that the report was inconsistent with the medical record.    The ALJ went on to state: "Notwithstanding, the opinions were considered in formulating the limitations included in the claimant's residual functional capacity."  (Tr. 835.)  Because the ALJ explained that the report was inconsistent with the evidence contained in the medical records but that he had considered the report in determining Plaintiff's RFC, the court rejects Plaintiff's argument that the ALJ failed to consider this evidence.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-33] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-35] be GRANTED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written

objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 16th day of June 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge